# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| NATHAN COTTRILL, <br><br> Plaintiff, <br><br> vs. <br><br> TRICAM INDUSTRIES, INC., <br><br> Defendant. | CASE NO. 5:22-CV-00072-AMK <br><br> MAGISTRATE JUDGE AMANDA M. KNAPP <br><br> **MEMORANDUM OPINION AND ORDER** |

Before the Court are the following motions filed by Defendant: (1) Motion for Summary Judgment (ECF Doc. 23); and (2) Motion to Exclude Opinions Contained in Kurt Whitling's First Report (ECF Doc. 26).  Plaintiff filed briefs in response (ECF Docs. 28, 29, 30), Defendant filed reply briefs in support (ECF Docs. 32, 33), and Plaintiff filed a supplemental affidavit (ECF Doc. 36).  The motions are fully briefed and ripe for review.

For the reasons set forth below, the Court **GRANTS** Defendant's Motion to Exclude Opinions Contained in Kurt Whitling's First Report, **GRANTS** Defendant's Motion for Summary Judgment, and **DISMISSES** Plaintiff's Complaint with prejudice.

## I.  Background

### A.  Procedural History

Plaintiff Nathan Cottrill ("Plaintiff" or "Cottrill") filed suit against Defendant Tricam Industries, Inc. ("Defendant" or "Tricam") in the Portage County Court of Common Pleas on December 9, 2021.  (ECF Doc. 1-2, p. 1.)  Cottrill alleged product liability and breach of implied warranty.  (*Id.*)  The case was removed to the United States District Court for the Northern

1

District of Ohio pursuant to 28 U.S.C. Sections 1332, 1441, and 1446. (ECF Doc. 1, p. 1.) This matter is before the undersigned by the consent of the parties. (ECF Doc. 7.)

Defendant filed the following motions on January 6, 2023:

- Motion for Summary Judgment (ECF Doc. 23);
- Motion to Exclude Opinions Contained in Kurt Whitling's Second and Third Reports (ECF Doc. 25);
- Motion to Exclude Opinions Contained in Kurt Whitling's First Report (ECF Doc. 26).

Plaintiff filed responses in opposition to the motions and a supplemental affidavit. (ECF Docs. 28, 29, 30, 36.) Defendant filed reply briefs in support of the motions. (ECF Doc. 32, 33.)

Oral argument was held on October 19, 2023, during which Plaintiff withdrew Mr. Whitling's Second and Third Reports. (ECF Docs. 25, 38.) The Court, therefore, denied as moot Defendant's Motion to Exclude Opinions Contained in Kurt Whitling's Second and Third Reports.[1] (ECF Docs. 37, 38.)

The remaining motions, and the issues presented therein, are now ripe for decision.

**B.     Factual Background**

Nathan Cottrill, a Best Buy Geek Squad employee, went to a client's house to mount two Sonos 5 speakers in an indoor basketball court on December 22, 2019. (ECF Doc. 29-2 (Deposition of Nathan Cottrill ("Cottrill Depo.")), 11:23-12:13 (PageID #600), 42:5-20 (PageID #608).) To install the speaker, Mr. Cottrill used a ladder manufactured by the Defendant, a GLMPX-26 articulating ladder ("accident ladder"). (*Id.* at 14:8-15:7, 17:1-9 (PageID #601).) He set up the accident ladder in the extension mode, extending to about 15 to 16 feet in length.

---

[1] The Court's discussion is necessarily limited to legally ripe issues. As Mr. Whitling's second and third reports are no longer a part of this record, all treatment of those reports in the motions at hand—including replies, responses, and oral argument—are not considered or discussed herein.

(*Id.* at 59:10-25 (PageID #612).) He ascended and descended the accident ladder two times initially, standing with his feet about 11 to 12 feet off the ground. (*Id.* at 66:13-67:13, 68:5-17 (PageID #614).) Mr. Cottrill climbed the accident ladder a third time, again standing about 11 to 12 feet off the ground. (*Id.* at 76:19-23 (PageID #616), 78:20-24 (PageID #617).) He then fell suddenly to the ground, becoming entangled with the ladder as his legs fell through the rungs. (*Id.* at 78:20-81:6 (PageID #617).) He landed on his legs and bent backward, with his legs between the rungs of the ladder, and caught himself with his arm. (*Id.* at 81:3-6 (PageID #617), 84:23-85:6 (PageID #618).) A hook penetrated his arm during the fall, and he broke his wrist when he landed. (*Id.* at 82:2-6, 84:8-11 (PageID #618).) After his fall, Mr. Cottrill saw that the accident ladder was bent near a rivet point. (*Id.* at 85:23-86:9 (Page ID ##618-19).)

In August 2022 interrogatory responses, Cottrill stated that the manufacturing defect that caused his fall was "set forth in the expert report of Kurt Whitling." (ECF Doc. 23-11, p. 6.)

**C.     Expert Report of Kurt Whitling, P.E.**

Kurt Whitling authored an expert report dated October 19, 2021, based on his inspection of the accident ladder on September 15, 2021, twenty-two months after the accident. (ECF Doc. 26-2, pp. 1, 5.)[2] In addition to inspecting the ladder, he stated that he reviewed the manual for the Gorilla Model GLMPX-13-17-22-26 and the technical specifications for that ladder from the Gorilla Ladder website. (*Id.* at p. 1.) Based on his visual inspection of the accident ladder, Mr. Whitling found that the failure appeared to originate at a rivet hole on the left side of the ladder, and proceeded almost entirely through the U channel of the ladder. (*Id.* at p. 7.) He noted that the hole for the rivet was oblong in shape, and that the oblong portion proceeded past a portion of the U channel that was 1/16" thick and into an edge that was 1/8" thick. (*Id.* at pp. 8-10.)

---

[2] While Mr. Whitling authored two additional expert reports, Mr. Cottrill has withdrawn those reports. (ECF Doc. 38, p. 34-35.) Therefore, only the contents of the first report and arguments related thereto are considered herein.

3

After making those observations, Mr. Whitling made the following findings:

> It is unclear why a ladder manufacturer would design a ladder with a supporting feature made of aluminum and having a thickness of only 1/16". The thin wall of the U channel would have made the channel much more flexible and significantly weaker than the remainder of the leg of the U channel, which had a thickness of nearly 1/8".

(ECF Doc. 26-2, p. 10.) He then posited that:

> a manufacturing deviance or tolerance issue with the cross brace or ladder width as assembled caused someone to create the oblong feature within the thin portion of the U channel extrusion in order to get the rivet for the cross brace through.

(*Id.* at p. 10.) In discussing possible causes for the elongated hole, he stated:

> [The creation of an oblong hole] would likely have been done by hand with a round file or a drill bit. The oblong portion of the rivet hole protruded into the thicker outer portion of the extrusion of the U channel, and significantly weakened the U channel and created a stress concentration at the oblong rivet hole. The cross brace was thicker than the thin portion of the U channel.

(*Id.* at pp. 10-11.) He went on to opine:

> Because of the manufacturing defect, there was a large stress concentration within the left U channel of the ladder. As Mr. Cottrill, who[] weigh[ed] approximately 210 pounds at the time of the incident, climbed the ladder, the left U channel suddenly broke as Mr. Cottrill stepped or stood on the subject rung. The ladder U channel snapped, the ladder twisted due to the sudden lack of torsional rigidity, and Mr. Cottrill fell to the ground and was severely injured.

(*Id.* at p. 11.)

Finally, Mr. Whitling articulated the following conclusions "to a reasonable degree of engineering certainty" based on his inspection of the ladder, his review of materials, and his education and experience as an engineer:

1. At the time of the accident, Mr. Cottrill weighed far less than the 375 pounds that the ladder was rated for.

2. Mr. Cottrill properly set up the ladder as an extension ladder at the time of the accident.

3. Gorilla Ladders modified the hole in the left U channel portion of the ladder in order to install a rivet for the cross brace piece due to some unknown

4

      manufacturing issue. By modifying the U channel, the hole protruded into the thicker portion of the U channel. This significantly weakened the U channel and caused a large stress concentration in that area. Gorilla Ladders' modification to the U Channel caused the failure of the ladder.

4. When Mr. Cottrill attempted to climb the ladder, the weakened U channel cracked, then twisted. The failure caused Mr. Cottrill to be thrown from the ladder, and caused the injuries.

(ECF Doc. 26-2, p. 12.)

## II.    Law & Analysis

**A.    Motion to Exclude the Opinions in the Whitling Report**

Tricam asserts the following arguments in support of his motion to exclude the opinions in the Whitling Report: (1) the report does not comply with the requirements of Federal Rule of Civil Procedure 26(a)(2)B); (2) the report provides insufficient evidence to show that Mr. Whitling is qualified to offer his opinions; and (3) the opinions in the report are not based on a reliable methodology.[3] (ECF Doc. 26-1.) Each argument will be addressed in turn.

**1.    Whether the Whitling Report Should be Excluded Under Rule 26(a)(2)(B)**

Tricam argues first that the Whitling Report should be excluded from evidence because it does not set forth Mr. Whitling's "experience or purported qualifications" and does not attach "a CV, rate sheet, or testimony list" as required under Federal Rule of Civil Procedure 26(a)(2)(B). (ECF Doc. 26-1, pp. 4-5.) Tricam argues that this failure was neither substantially justified nor harmless, as it left Tricam unable to evaluate Mr. Whitling's qualifications. (*Id.* at p. 5.)

The Federal Rules of Civil Procedure require that a written expert report contain:

(iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;

---

[3] Tricam's additional argument that Mr. Whitling repudiated the opinions in his first report when he authored his second and third reports (ECF Doc. 26-1, pp. 10-12) need not be addressed given the withdrawal of those reports.

      (v)      a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

      (vi)      a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. PROC. 26(a)(2)(B). "If a party fails to provide information . . . as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless*." FED. R. CIV. PROC. §37(c) (emphasis added). "The non-disclosing party bears the burden of proving that a disclosure was harmless." *United States v. Rapanos*, 376 F.3d 629, 644–45 (6th Cir. 2004), *vacated and remanded on other grounds*, 547 U.S. 715 (2006) (citing *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003)).

In response, Cottrill explains that he received both the Whitling Report and a separate document containing Mr. Whitling's CV and testimony list in August 2021, but that his counsel inadvertently failed to forward the document containing the CV and testimony list to Tricam when he served the Whitling Report. (ECF Doc. 30, p. 3; ECF Doc. 30-1, p. 93.) Cottrill's counsel averred that the CV and other documents were immediately served on Tricam once counsel became aware of the oversight; a copy of those documents was also filed with the Court. (ECF Doc. 30-1, pp. 93-94; ECF Doc. 36.) Cottrill argues that Tricam suffered no prejudice resulting from the delayed service of the CV and other documents, since "Tricam did not depose Whitling, nor did it ever intend to depose Whitling." (ECF Doc. 30, p. 4 (citing ECF Doc. 20, 11/15/22 Joint Status Report ("At this time, Defendant does not anticipate needing to depose Plaintiff's expert.")).) On these grounds, Cottrill argues that his failure to timely serve the CV and other documents was harmless, and not a reason to strike the report. (*Id.* at p. 5.)

"[N]o remedy is appropriate for a harmless violation of Rule 26(a)." *Roberts*, 325 F.3d at 782; *see* FED. R. CIV. P. 37(C)(1) 2000 advisory committee's notes ("Even if the failure [to

6

disclose] was not substantially justified, a party should be allowed to use the material that was not disclosed if the lack of earlier notice was harmless."). The Sixth Circuit has also observed: "The advisory committee's note to Rule 37(c) 'strongly suggests that "harmless" involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party.'" *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (quoting *Vance v. United States*, Case No. 98-5488, 1999 WL 455435, *5 (6th Cir. June 25, 1999)).

Here, the Court finds that Cottrill has met his burden to show that his failure to timely disclose Mr. Whitling's CV, rate sheet, and list of prior testimony was a harmless violation of Rule 26(a)(2)(B). He provided an explanation which establishes that the failure resulted from an honest mistake and was remedied as soon as he was made aware of it. Although Tricam suggests it suffered harm because it "could not evaluate [Mr.] Whitling's purported qualifications" (ECF Doc. 26-1, p. 5), noting that Rule 26(a)(2)(B) "was designed to limit th[e] need [to depose Mr. Whitling] and the corresponding expense associated with depositions" (ECF Doc. 32, p. 2), Tricam reported to the Court in a November 15, 2022 Joint Status Report that it did not anticipate needing to depose Mr. Whitling (ECF Doc. 20). In these circumstances, the Court finds the error was harmless and therefore that no remedy is required.

    **2.**    **Whether Requirements of *Daubert* and Rule 702 Have Been Met**

Tricam next challenges the admissibility of the Whitling Report under Federal Rule of Evidence 702, arguing: (1) Cotttrill has failed to demonstrate that Mr. Whitling is qualified to act as an expert in this case (ECF Doc. 26-1, pp. 5-7); and (2) Mr. Whitling did not use a reliable methodology to support the opinions he provided in the Whitling Report (*id.* at pp. 7-10). Each argument will be addressed in turn.

i. **Legal Standard**

Federal Rule of Evidence 702, revised to reflect the United States Supreme Court's holding in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. When expert testimony's "factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). "District court judges must determine whether an expert's testimony is both relevant and reliable when ruling on its admission." *Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir. 2000).

The district court has a "gate-keeping role" in determining the admissibility of expert testimony. *Daubert*, 509 U.S., 597. The proponent of the evidence must establish admissibility by a preponderance of the evidence. FED. R. EVID. 104(a); *see also Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987); *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (finding in a motion to exclude expert testimony, "[i]t is the proponent of the testimony that must establish its admissibility by a preponderance of proof.").

8

### ii. Whether Mr. Whitling is Qualified to Offer His Expert Opinion

Tricam argues that Cottrill has failed to show he is qualified to offer the expert testimony in the Whitling Report. (ECF Doc. 26-1, pp. 5-7.) In written briefing, Tricam focused on Cottrill's failure to timely submit the CV and related documents. (ECF Doc. 26-1, pp. 5-7; ECF Doc. 32, pp. 2-3.) At oral argument, following review of the CV and other materials, Tricam argued that Mr. Whitling still lacked the necessary qualifications because "there is no evidence that he has ever designed, tested, manufactured or assessed ladders for purposes of defect or causation." (ECF Doc. 38, p. 5.) Counsel explained that "the issue in this case is how forces are applied to a rivet or to a fastener of a cross brace on a ladder," making experience designing or testing ladders a necessary qualification for expert testimony. (*Id.* at pp. 9-10.)

In opposition, Cottrill notes that Mr. Whitling is a mechanical engineer and a registered professional engineer in Ohio. (ECF Doc. 30, p. 6; ECF Doc. 38, pp. 7-8 (citing ECF Doc. 36, p. 3).) He explains that "the cause at issue here is two pieces of aluminum which were fastened by a steel rivet and that failed and pulled apart," and asserts that this an issue any engineer would be qualified to assess. (ECF Doc. 38, p. 6.) As to specific experience relevant to Mr. Whitling's opinions, Cottrill highlights Mr. Whitling's past work at a defense-oriented engineering firm and his asserted expertise in testing and analysis, origin and cause, and critical fastening – bolted joint failure analysis. (*Id.* at pp. 7-9 (citing ECF Doc. 36, pp. 3-4).)

Rule 702 incorporates the threshold mandates in Federal Rule of Evidence 104(a), which provides the standard of proof for "any preliminary question about whether a witness is qualified." FED. R. EVID. 104(a). "When making a preliminary finding regarding an expert's qualifications under Fed. R. Evid. 104(a), the court is to examine 'not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" *Buck v. Ford Motor Co.*, 810 F. Supp. 2d 815, 822 (N.D. Ohio

9

2011) (citing *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 303 (6th Cir.1997) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)).

On this threshold matter, the Court finds the evidence is sufficient to demonstrate that Mr. Whitling is qualified to offer an opinion as to whether a manufacturing defect was evident from a ladder with an elongated rivet hole.  Mr. Whitling need not be qualified for every ladder accident case, but instead need only be qualified to an extent that he could assist the trier of fact in this case.  *See Berry*, 25. F.3d at 1351.  Mr. Whitling is a licensed mechanical engineer with a master's degree and many years of experience, including experience related to origin and cause, custom machinery, mechanical systems, and "critical fastening – bolted joint failure analysis." (ECF Doc. 36 at pp. 3-4.).  The Court finds the evidence establishes "a foundation for [this] witness to answer a specific question."  *Buck*, 810 F. Supp. 2d at 822 (internal citations omitted).

### iii.   Whether Mr. Whitling Used a Reliable Methodology

The more critical and comprehensive defect identified in Tricam's *Daubert* motion concerns the reliability of the opinions offered in the Whitling Report.  Tricam primarily challenges the reliability of the following two final conclusions in the Whitling Report:

3. Gorilla Ladders *modified the hole in the left U channel portion of the ladder* in order to install a rivet for the cross brace piece *due to some unknown manufacturing issue*.  By modifying the U channel, the hole protruded into the thicker portion of the U channel.  This significantly weakened the U channel and *caused a large stress concentration in that area*.  Gorilla Ladders' modification to the U [c]hannel caused the failure of the ladder.

4. When Mr. Cottrill attempted to climb the ladder, the weakened U channel cracked, then twisted.  The failure caused Mr. Cottrill to be thrown from the ladder, and caused the injuries.

(ECF Doc. 26-2, p. 12 (emphasis added).)

Tricam argues that "Mr. Whitling used *ipse dixit* theorizing instead of the scientific method to develop his opinions," emphasizing that his opinions were based only on a visual

10

examination of the ladder and a review of the ladder's manual and technical specifications. (ECF Doc. 26-1, pp. 7-9.) Cottrill argues in response that visual inspection was an appropriate methodology to use in this case, which involves "rivets in a ladder." (ECF Doc. 30, p. 6.)

Although there is no "definitive checklist or test" to establish the reliability of expert testimony, courts have identified several factors that bear on the inquiry, including:

> whether the theory or technique in question "can be (and has been) tested," whether it "has been subjected to peer review and publication," whether it has a "known or potential rate of error," and whether the theory or technique enjoys "general acceptance" in the "relevant scientific community."

*Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (quoting *Daubert*, 509 U.S. at 593–94). The Sixth Circuit also highlights "red flags" that caution against certifying an expert, like anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity. *See Newell Rubbermaid, Inc.*, 676 F.3d at 528.

An expert must articulate an underlying methodology to avoid reaching conclusions that are too speculative to be reliable. *See Williams v. Syphan*, 2023 WL 1305084, at *3 (6th Cir. Jan. 31, 2023); *see also Williams v. Syphan*, 585 F. Supp. 3d 1045, 1049 (N.D. Ohio 2022) (finding an expert's "methodology must not leave too great an analytical gap between it and the conclusion") (internal citations omitted), *aff'd*, No. 22-3222, 2023 WL 1305084 (Jan. 31, 2023). While expert opinions "can be based on the expert's 'practical experiences,'" those opinions must nonetheless "'include how and why the expert reached a particular result, not merely the expert's conclusory opinions.'" *Williams*, 2023 WL 1305084 at *3 (citing *First First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) and *Thacker v. Ethicon, Inc.*, 47 F.4th 451, 459 (6th Cir. 2022) (internal citations omitted)). "Untested hypotheses, even if plausible, are insufficient to satisfy Rule 702." *In re Heparin Prod. Liab. Litig.*, 803 F. Supp. 2d 712, 738 (N.D. Ohio 2011), *aff'd sub nom. Rodrigues v. Baxter Healthcare Corp.*, 567 F. App'x

11

359 (6th Cir. 2014) (citing *Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194, 1202 (11th Cir.2002) ("The courtroom is not the place for scientific guesswork, even of the inspired sort.") and *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 670 (6th Cir. 2010) (explaining that a "working hypothesis" is not "admissible scientific knowledge")).  Therefore, there must be a "reasonable chain of evidence" based on more than "speculation from the absence of another obvious cause" to support an opinion as to causation.  *Rolen v. Hansen Beverage Co.*, 193 Fed.App'x. 468 (6th Cir. 2006).

As a general matter, courts have found that "visual inspection is a reliable basis for a qualified expert to form an opinion."  *O'Donnell v. Yezzo*, No. 3:17-CV-02657-JGC, 2023 WL 3791548, at *7 (N.D. Ohio June 2, 2023) (citing *Mohney v. USA Hockey, Inc.*, 300 F. Supp. 2d 556, 566 (N.D. Ohio 2004), *aff'd*, 138 F. App'x 804 (6th Cir. 2005); *Davis Elecs. Co. v. Springer Cap.*, LLC, 558 F. Supp. 3d 443, 449 (W.D. Ky. 2021); *Jacobs v. Tricam Indus., Inc.*, 816 F. Supp. 2d 487, 493 (E.D. Mich. 2011)); *see also Clark v. Chrysler Corp.*, 310 F.3d 461, 467 (6th Cir. 2002) ("Daubert does not require an expert to come in and actually perform tests in any given situation").  As the Supreme Court held in *Kumho Tires*, the inquiry is not whether a visual inspection was done, but the "reasonableness of using such an approach" that a court must consider, along with other indicia of reliability.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153–54 (1999).

Here, Cottrill argues that the opinions of both Mr. Whitling and Tricam's own expert relied similarly on visual inspection of the ladder, agreeing on "the mechanism of failure- that a rivet hole was enlarged to the point it permitted the rivet to pull through" and agreeing that "the rivet hole is oval shaped, not circular as it typically should be." (*Id.* at p. 7; *see also* ECF Doc. 38, pp. 18-19.)  Cottrill contends that the only difference between Mr. Whitling's opinion and

12

that of Tricam's expert were their conclusions, in Mr. Whitling's case that "the enlargement was due to a filing/drilling or 'reaming' out of the rivet hole" and in Tricam's case that "the enlarged rivet hole was due to overloading."  (*Id.*)  He further argues that the drilling, filing, or reaming out of the rivet hole contemplated by Mr. Whitling's opinion was physically evidenced by "burnishing" that is "readily apparent in the photographs."  (*Id.*)

In contrast, Tricam argues that visual inspection was insufficient to support Mr. Whitling's opinions, including his opinion that Tricam "modified the hole in the left U channel portion of the ladder . . . due to some unknown manufacturing issue."  (ECF Doc. 26-1, p. 9.)  As to this opinion, Tricam notes that Mr. Whitling did not, for example, compare the accident ladder to an exemplar or design drawings to confirm what "unknown manufacturing issue" spurred the contemplated modification to the hole.  (*Id.*)  Tricam explained further at oral argument:

> [T]he entire basis of his opinion in the first report is that there was a component of the ladder that was not manufactured properly, and so somebody on the assembly line had to sort of drill out the hole to make it larger so that it could fit. That's a very simple theory to prove or disprove. All he had to do was measure the cross brace or the other pieces on the flange end of the ladder where the damage is and perform measurements on the other flange end of the ladder, which is identical to the side that was broken, and if the pieces are the same size, then his theory is out the window. So he didn't perform . . . any testing for measurements or calculations that he needed to perform to pro[ve] that his theory was correct.

(ECF Doc. 38, pp. 13-14.)

As to Mr. Whitling's additional opinion that a modification to the rivet hole "significantly weakened the U channel and caused a large stress concentration in that area," Tricam further argues that Mr. Whitling did not perform calculations to determine the stress concentration or assess the increased amount of stress caused by the modification.  (ECF Doc. 26-1, p. 9.)  Cottrill responded at oral argument that the opinion was supported by Mr. Whitling's visual observation of the hole and "the fact that as you remove material from any type of supporting structure, it's common knowledge that as you remove material, it weakens it."  (ECF Doc. 38, p. 21.)

13

The Sixth Circuit recently affirmed the exclusion of an expert opinion when the expert provided measurements from an accident site but offered no reliable methodology to connect his opinions to those facts, thus failing to "explain how those inputs add up to his output." *Williams*, 2023 WL 1305084, at *2. "With no articulated underlying methodology to pull everything together," the court found the expert's conclusions to be "based on equal parts extrapolation and speculation." *Id.* And because the expert did not "explain[] how or why his experiences caused him to reach his ultimate. . . opinion," the court found the opinion to be "nothing more than [the expert's] *ipse dixit*." *Id.* at *3.

For the reasons set forth below, the Court must similarly conclude that there is too great an analytical gap between Mr. Whitling's stated findings and observations and his ultimate conclusions as to causation, rendering the Whitling Report unreliable.

In support of his conclusion that Tricam "*modified the hole* in the left U channel portion of the ladder in order to install a rivet for the cross brace piece *due to some unknown manufacturing issue*" (ECF Doc. 26-2, p. 12 (emphasis added)), the Whitling Report supplies only the following additional information and explanation:

> It appeared that a manufacturing deviance or tolerance issue with the cross brace or ladder width as assembled caused someone to create the oblong feature within the thin portion of the U channel extrusion in order to get the rivet for the cross brace through.  This would likely have been done by hand with a round file or drill bit.

(*Id.* at p. 10.)  As Tricam points out, Mr. Whitling did not use a comparison to design drawings or another ladder to explain or support his conclusion that there was "a manufacturing deviance or tolerance issue" that spurred a Tricam representative to manually modify the rivet hole during assembly.  (ECF Doc. 26-1, p. 9.)  Tricam also notes that Mr. Whitling did not use measurements of the accident ladder itself to prove or disprove his theory that there was a manufacturing deviance or tolerance issue.  (ECF Doc. 38, pp. 13-14.)  Further, as noted in Section II.2.ii.,

14

*supra*, there is no evidence that Mr. Whitling had knowledge of, or experience with, the ladder manufacturing process that gave him particular insight into the "unknown manufacturing deviances," or the contemplated repair of such deviances by manually modifying a rivet hole. Instead, Mr. Whitling's conclusion that that there was a "manufacturing issue" that led Tricam to manually modify the rivet hole appears to be based exclusively on his visual observation of a hole with a different shape and an untested hypothesis as to how that change might have come about. Because the Whitling Report does not supply a reliable methodology to support the conclusion that Tricam "modified the hole in the left U channel portion of the ladder in order to install a rivet for the cross brace piece due to some unknown manufacturing issue" (ECF Doc. 26-2, p. 12), the Court finds that opinion to be unreliable and inadmissible.

As to Mr. Whitling's further opinion that the modified rivet hole "significantly weakened the U channel and caused a large stress concentration in the area" and "caused the failure of the ladder," the Whitling Report offers the following findings in support:

- The failure appeared to originate at the rivet hole on the left side of the ladder, and proceeded almost entirely through the U channel of the ladder (ECF Doc. 26-2, p. 7);

- The hole for the rivet was oblong in shape, and the oblong portion proceeded past a portion of the U channel that was 1/16" thick and into an edge that was 1/8" thick (*id.* at pp. 8-10);

- The wall of the U channel that was 1/16" thick would have been more flexible and weaker than the portion that was 1/8" thick (*id.* at p. 10);

- The protrusion of the oblong portion of the rivet hole into the thicker portion of the U channel "significantly weakened the U channel and created a stress concentration at the oblong rivet hole" (*id.* at pp. 10-11); and

- Mr. Cottrill weighed 210 pounds when the ladder broke, below the ladder's 375 pound weight capacity (*id.* at pp. 3, 11).

As Tricam argues, Mr. Whitling did not perform calculations or conduct testing to assess the impact of the oblong rivet hole on the ability of the accident ladder to bear increased stress.

15

(ECF Doc. 26-1, p. 9.) Instead, Cottrill argues that the reliability of this finding is based on "common knowledge that as you remove material, it weakens it." (ECF Doc. 38, p. 21.) Because the Whitling Report does not supply a reliable methodology to support the conclusion that the modified rivet hole "significantly weakened the U channel and caused a large stress concentration in the area" and "caused the failure of the ladder" (ECF Doc. 26-2, p. 12), the Court finds that opinion to be unreliable and inadmissible.

The analytical gaps in Mr. Whitling's report go to conclusions that are at the heart of the issue: whether there was a manufacturing defect and whether the accident was caused by that defect. His opinions, however, offer "no articulated underlying methodology to pull everything together." *Williams*, 2023 WL 1305084, at *2. Providing unsupported, legally determinative opinions does not assist the trier of fact. The Court, in its broad discretion, finds that the Whitling Report crosses the line from knowledge to speculation. *See Tamraz*, 620 F.3d, 672. Accordingly, the Whitling Report is deemed inadmissible and Tricam's motion to exclude the opinions in that report is granted.

**B.      Motion for Summary Judgment**

Tricam argues that summary judgment is appropriate: on the manufacturing defect claim because there is no admissible evidence of a defect or causation; and on the breach of implied warranty claim because that claim is preempted by the Ohio Product Liability Act. (ECF Docs. 23, 23-1, 33.) In response, Cottrill incorporates the arguments that he raised in response to the motion to exclude the Whitling Report and argues that the Whitling Report raises questions of fact to defeat summary judgment on the manufacturing defect claim. (ECF Doc. 28.)

16

1. **Legal Standard**

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. Instead, the non-moving party must present specific facts that demonstrate there is a genuine issue of material fact for trial. *Id.* at 587. "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).

The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

2. **Summary Judgment is Appropriate on Manufacturing Defect Claim**

In his first cause of action, Cottrill asserts a products liability claim for a manufacturing defect under Ohio Revised Code Section 2307.74. (ECF Doc. 1-2, pp. 3-4.) Tricam seeks summary judgment on this claim because Cottrill lacks admissible evidence of a manufacturing defect or causation. (ECF Doc. 23-1, pp. 7-10.) Cottrill argues in response that the Whitling Report creates a question of fact, but does not argue whether—or how—his claim survives in the event that the Whitling Report is excluded from evidence. (ECF Doc. 28.)

17

> Ohio law establishes the following requirements for a manufacturing defect claim:
>
> A product is defective in manufacture or construction if, when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards. A product may be defective in manufacture or construction as described in this section even though its manufacturer exercised all possible care in its manufacture or construction.

OHIO REV. CODE ANN. § 2307.74.  A products liability claim for a manufacturing defect therefore requires a plaintiff to establish, by a preponderance of the evidence, that: (1) the product is defective in manufacture or construction; and (2) the defect was a proximate cause of the harm. OHIO REV. CODE ANN. § 2307.73.  "In manufacturing defect cases, the plaintiff has the burden of proving the existence of the defect."  *Miller v. ALZA Corp.*, 759 F. Supp. 2d 929, 941 (S.D. Ohio 2010) (citing, *inter alia*, *Bonacker v. H.J. Heinz Co.,* 111 Ohio App.3d 569, 676 N.E.2d 940, 942 (Ohio App.1996)).

Because the Court has granted Tricam's motion to exclude the Whitling Report from evidence, Cottrill cannot rely on Mr. Whitling's findings to establish a question of material fact to preclude summary judgment.  Cottrill has not identified any facts in evidence which support a finding that the accident ladder was defective in its manufacture or construction, or a finding that any such defect was the proximate cause of his alleged harm.  Because there is "no genuine issue as to any material fact" with regard to Cottrill's manufacturing defect claim, the Court finds that Tricam is entitled to judgment as a matter of law on that claim.  FED. R. CIV. P. 56(c).

### 3. Summary Judgment is Appropriate on Common Law Warranty Claim

In his second cause of action, Cottrill asserts a claim for a breach of implied warranty under Ohio common law.  (ECF Doc. 1-2, p. 4.)  Tricam seeks summary judgment on this claim because the claim is preempted by the Ohio Product Liability Act.  (ECF Doc. 23-1, pp. 14-15.) Cottrill has not offered argument in opposition to this part of Tricam's motion.  (ECF Doc. 28.)

18

"[W]hen the Ohio General Assembly enacted the current version of the OPLA [Ohio Products Liability Act], which became effective on April 7, 2005, it abrogated all common law claims relating to product liability causes of actions." *Evans v. Hanger Prosthetics & Orthotics, Inc.*, 735 F. Supp. 2d 785, 795–96 (N.D. Ohio 2010) (citing *Flex Homes, Inc. v. Ritz-Craft Corp. of Michigan*, No. 07CV1005, 2009 WL 3242140, at *13 (N.D. Ohio Sept. 30, 2009), *aff'd sub nom. Flex Homes, Inc. v. Ritz-Craft Corp of Michigan, Inc.*, 491 F. App'x 628 (6th Cir. 2012) n. 22 (N.D. Ohio Sept. 30, 2009).) "Specifically, the General Assembly added a section stating that "Sections 2307.71 to 2307.80 of the Revised Code are intended to abrogate all common law product liability causes of action." *Id.* (citing OHIO REV. CODE § 2307.71(B)).

Because Cottrill stated a manufacturing defect claim under the OPLA in his first cause of action, the Court finds that Tricam is entitled to judgment as a matter of law as to Cottrill's common law claim for breach of warranty in his second cause of action.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Exclude the First Report of Kurt Whitling (ECF Doc. 26), **GRANTS** Defendant's Motion for Summary Judgment (ECF Doc. 23), and **DISMISSES** Plaintiff's Complaint (ECF Doc. 1) with prejudice.

March 14, 2024

                                           */s/Amanda M. Knapp*
                                           AMANDA M. KNAPP
                                           United States Magistrate Judge